Good morning, Your Honors. May it please the Court, Holly Sullivan, Federal Defenders in San Diego, on behalf of the appellant, Clifford Bates. In this case, the District Court erred. The first way in which the District Court erred was by allowing other acts of evidence, allowing the government to argue repeatedly that Mr. Bates was involved in smuggling of drugs, smuggling of marijuana, in over 60 occasions, when only one act of evidence, which the government introduced in this case and the District Court allowed. The first set of other acts of evidence of statements were that Mr. Bates had previously smuggled money on two days into the United States, April 13th and April 14th, the two days before the offense in this case. The second set of statements that the government introduced in this case were statements Mr. Bates made in transport to the U.S. in 1960, load cars, in the past. No other information was given about what consisted of a load car. These statements were other acts of evidence under 404B. The government argued that it was a party admission. They said it's not being offered to show he knew specific 404B acts, but it's offered to show his admission, his statement. The fact that a statement is made, a party admission is made, an exception to hearsay or non-hearsay, does not take that statement out of the rules of evidence. There is still an evaluation done under 404B. There is still an evaluation done of relevancy, a 403 analysis. There is nothing to state that solely because an admission is made by a party or that there is a hearsay exception that 404B is not relevant and a 404B analysis should not be undertaken. In Biba Rodriguez, it was looked at as to whether or not an admission made by a defendant was an admission not subject to 404B or whether a 404B analysis would be undertaken. Did the defense ask at some point that if any part of his confession came in, they wanted the whole confession to come in? The government said that they intended to put forth a confession in this case. And the defense asked if the government was allowed to parse out admissions that also deny knowledge statements would be allowed to come out. That was at the time of the motion hearing. And at the time of the suppression hearing, when the statements were not brought out, the content of the statements were not brought out by government counsel on direct. On cross of the agent, agent Farron, defense counsel attempted to bring out the substance of the statements and the government objected on relevance grounds. The district court allowed those statements to come out. But the fact that the government objected on relevance grounds, the government is now trying to use as saying there was notice given that those statements would be introduced at trial. Well, nevertheless, it seemed like the defense wanted everything to come in if anything was coming in. It has that flavor anyway. It has that flavor in the government had stated and through their questioning of the witness of agent Farron that they intended to bring out statements that Mr. Bates had denied knowledge or said that he was not aware of marijuana concealed within the car he was driving on April 15th. But then later changed his story and said, I thought there might be marijuana concealed within that car. Those were the statements that the government intended to introduce and intended to bring out. And Mr. Bates counsel wanted to bring out the statements that there were denied knowledge statements made and that only after a lengthy interrogation did Mr. Bates say anything differently. That was the purpose of speaking of the rule of completeness and allowing all of those statements to come in, not allowing the government to parse out the statements solely indicating guilt. Also through Bieber Rodriguez, the statements that are made if they are to come in and to be inextricably intertwined, to come in as an admission, in that case the statement that was made was that Bieber Rodriguez stated he had been smuggling narcotics including cocaine and the court allowed the statements to come in for was that time period of quite a while encompassed the time period that was charged within the indictment. The court did undergo a 440 analysis in looking at a prior marijuana smuggling instance. And in that case, that's why it's separate. The statements that the government brought in in this case, the statements of money smuggling on April 13th and April 14th and 60 prior loads, being a They are not inextricably intertwined. Mr. Bates has not been charged in some type of conspiracy. There is no scheme to defraud that has been listed. Those are the types of cases where this court has found that other acts of evidence or prior instances of conduct would be inextricably intertwined with the present offense and not be subject to a 404B analysis. Is he claiming lack of knowledge, intent, et cetera? He's claiming lack of knowledge as to the April 15th incident. And you're saying the prior acts can't come in to indicate his knowledge? No, Your Honor. In order for the statements to come in to indicate knowledge of the incident of the April 15th, a 404B analysis would have to be done to The only information or evidence before the court that supported that any previous occurrences of crossings occurred were solely Mr. Bates' statements. And those statements say that on April 13th and April 14th, Mr. Bates was involved in money smuggling, not drug smuggling, money smuggling. The other statements that were made in transport to the facility were that Mr. Bates had been a passenger in 60 load cars. In prior decisions by this Court, Well, it didn't look like it said that. It said that he was usually a passenger, I think, at least the part I read. The statement that the agent made at trial was that what the prosecutor asked, what was Mr. Bates' role in these prior occasions, these prior load cars? And the agent stated he said he was usually a passenger. Mainly the passenger. Mainly the passenger. As a matter of fact, Mr. Bates' case is a case that's often asked. It was a case that was asked frequently. The last two days he transported something illegal, but he said it wasn't drugs, it was something else. And this time, he's caught transporting drugs. The fact that he said it was money the last two days, it seems to me somebody could infer, well, maybe he wants to call it money, but maybe he was transferring drugs all the time. You don't have to accept everything he says, right? I understand the inference that can be made. And, in fact, that's propensity evidence that Mr. Bates has a propensity to smuggle. I don't mean propensity, I mean just knowledge that he knows what he was doing. He's dealing, he's a full-time or largely full-time transporter of drugs and other contraband. And this time he says, oops, I didn't know I was transporting drugs. That's not propensity. That's sort of going to the question of, did he know what he was doing this time? Because that's what he does for a living, he transports drugs. I disagree with Your Honor's evaluation of the evidence that was presented or the facts that were presented. The facts were solely Mr. Bates' statements. And there was no evidence that was presented that Mr. Bates. Well, the money he had when he was arrested was evidence, wasn't it? Correct. When you say no, you make a pretty broad statement. Didn't he have 1,600-some dollars and he said he'd been paid 1,500 per trip, he'd been paid for the last two trips he made, 1,500, been paid. Didn't he say those things? Yes. And then when the money was introduced, isn't that evidence that he's telling the truth? Well, that's evidence of the money smuggling. Mr. Bates' statements were that he had. He just said he was paid for each trip. Isn't that what he said? Correct. They had asked how much he was paid each trip. His statements were that on those two days. But when you say no, you make your statements, all I want you to do, don't let one client make your mistake, what the record shows. And you said there was no evidence. Only thing was his statements. Isn't that what I heard you say? Yes, Your Honor, but there's no evidence. So there is evidence. There's no evidence in the record that Mr. Bates had previously been involved in drug smuggling. Mr. Bates' statements were that on April 13th and April 14th. Except his statements, you're saying. His statements did not involve drug smuggling. His statements were that on April 13th and April 14th, he was involved with money smuggling. How about the 60 times when he was in the car? The statement that was made regarding. Always money, struggling, always money? There's no question. How about him saying he suspected there was marijuana this time because he was heard out of Mexico. Is that always money? No, Your Honor, the statements. You're young. You're going to be back here a lot of times. And you've got to guess we might know what the record shows. The statements that were made were 60 prior loads. There was nothing that stated 60 prior loads of narcotics. That he was a passenger in 60 prior cars that he believed contained narcotics. There's nothing within his statement. Did he say he believed that this time he was driving narcotics? The agent testified. Did he say it? Yes. The agent testified. He said, this time I thought it was different. This time I thought it was narcotics. Differentiating this time from any previous times that the government brought into evidence, statements of money smuggling, statements of 60 prior loads, there wasn't any evidence presented by the government that Mr. Bates had believed on those prior occasions that loads brought into the United States that the car he drove on April 13th or April 14th contained narcotics. And that's what differentiates those times from the time charged within the indictment, the time of April 15th. Senator, if I could please reserve the remaining time that I have. You've already used it all. You're over your time, but we will give you a minute. Thank you. Time just goes by really fast when you're having fun. Good morning. I'm Carl Sandoval of the United States. You can give us some of your time. Very well. No, that's a joke. Okay. Let me first address the issue of admissions and the other acts evidence. On the record in this case, the particular facts of this case, there was no other acts evidence. The government is not taking the position that an admission confession might never be susceptible to some kind of 404B analysis, but given the very unique circumstances of this case, the facts on the record here, that the statements that are at issue are really properly characterized as an admission and should come in notwithstanding the 404B argument made by defense counsel, and that even had we characterized as 404B, the notice requirements would have been met. With respect to the circumstances of the admission, I think there are some things that are important that are in the record. They should come in as an admission of what? Well, first off. An admission of prior acts? No, and the government didn't offer this. It didn't make any effort. Okay, but it's not an admission that he was smuggling on this day. No, but it is certainly part and parcel of the statement that he gave at the time of his apprehension. He described the circumstances of meeting Rudy, the person that he believed that he was driving a car for. It's really inseparable in terms of it being inextricably intertwined with the offense on the very day in question. And so certainly I think to the extent he is giving a Mirandized statement regarding what his involvement is, what his knowledge is, that is certainly material and would come in as a statement of the defendant. And one thing I think to keep in mind is obviously these are statements the defendant is offering in response to questioning, at least as to the two prior days, but certainly in his mind he considered to be relevant to the offense that he was being interviewed about. I'm sorry, I didn't mean to cut you off, Your Honor. This is unlike a case, for example. Let's go on to the next one. How do you get this in as an admission on the 60 times? And again, an admission of what? That's not part and parcel of, that's not sort of a continuous set of circumstances in which he's involved for three consecutive days with smuggling something across the border. Understood. Your Honor, I think the answer would be that he had taken the position earlier in his interview that in fact when he was first denying knowledge, he doesn't associate with people who do drugs, he'd never do anything like that, et cetera, et cetera. Here is the driven snow in terms of his connection to any kind of drug involvement or drug smuggling. To the extent that he now later spontaneously offers that information, which again in his mind he certainly considers to be relevant. It's not in response to interrogation by the agent. That certainly bears on, I think, impeaching and questioning his case. Okay. Well, coming in as impeachment is different from coming in as an admission. Now, how does the 60 acts, how does that impeach his testimony? Because there isn't any evidence that those 60 acts involved drugs. Well, I think that's. It certainly demonstrates that he has a propensity towards smuggling something. I think it simply bears on the government's ability to tell the entire story of what the statements were, what his confession was. It's hard to. Yeah, but confession as to prior acts, that's why it's barred under the prior acts. You have to get around the prior acts question. And one way that you can do that is by, is if he said I've never smuggled drugs, is by coming and saying yes, he told the agent, I've smuggled drugs on 60 times. But that's not precisely what he said. That's true. However, I think that in the context, it's really inextricably intertwined with the entirety of the, whether we, maybe we need to characterize necessarily as an admission, but certainly to the extent it's inextricably intertwined with the whole, the context of his statement. That would take it out of what I think is a more traditional 404B analysis. For example, one of the cases raised by defense counsel in her papers is the Vega case. Government submits that that is a very different case than this case. Vega involved, for example, extrinsic evidence, both testimony and documentary evidence of these other wrongs. I believe there were bank records and prior crossings evidence. In addition, there was the fact that that was essentially brought out on cross-examination of the defendant. In addition, the government in that case was very clear about intending to prove the other wrongs, the other acts. This is a very different case. This is solely based on the defendant's statements. Again, it's a spontaneous offering. It's not something where extrinsic evidence is coming in, and so certainly the government should be allowed to put in that type of statement, which is really at its heart a statement of the defendant regarding, certainly in his own mind,  The issue as to notice, and I'll get to Bebo Rodriguez in a second, there is certainly the issue of notice, and the court found this and gave an extended discussion of it on the record at the time of the new trial sentencing motion, and that is that even if it was 404B notice, the district court in its discretion certainly felt that the 404B requirements had been met and that the notice requirement had been met. So even if we assume that, in fact, it was 404B evidence, the reality stepping back is that the purposes of 404B, the notice requirement, that was satisfied. The requirement is that reasonable notice be given prior to trial or even at trial for good cause shown, the purpose of the rule being intended to reduce surprise, to avoid unfair surprise. There was no surprise here. There was no doubt that the government intended to use the defendant's statement. Ms. Sullivan mentioned the fact that, excuse me, at the voluntariness hearing, that the government did not, on its direct examination of the agent to establish voluntariness, bring out all the substance of the statements. But that's really a red herring, because the issue at that point was simply the voluntariness. The government didn't have to bring out the substance of the statements. It was simply what are the statements. In any event, at the end of the day, it was clear the government intended to introduce the statements. It was clear what the statements were. There were discussions at the time of the Illuminate hearing and the voluntariness. It was clear at trial. So there was really no issue of surprise. There's no unfairness that befell the defendant in those circumstances. And so I think the only reasonable inference in the record is that certainly the defendant knew the statements were coming out, and there was no harm, no foul, if you will. With respect to Vivo Rodriguez, I'll just address that briefly. I think that we – I think that I can fairly say that Ms. Sullivan and I probably disagree in terms of the appropriate interpretation of Vivo Rodriguez. Vivo Rodriguez is actually, I think, very helpful to the government, because in that case, although at the district court level the parties looked at the issues as a 404B issue, in fact, the Court of Appeals said, no, these are admissions. Again, in that case, a post-arrest statement was given, as in this case. In that case, as in this case, the defendant admitted to routinely transporting drugs into the U.S. And so to the extent he's discussing involvement with other acts, whatever they may be on other dates, the court in that case certainly saw fit to allow them in as admissions, provided they were relevant. Here we think those admissions are certainly relevant to the issues in the case. And I will submit on that unless the court has specific issues to address. I do have one question. That is, does the government concede that in any event this case needs to go back for a Booker-Hamilene remand? It does, Your Honor. Okay. Thank you. Thank you. Thank you. I would like to just address a few brief issues that were brought up through government counsel. First, the government did not give notice that they intended to introduce those statements, and it did not and still has not given any type of notice as to what the hypothesis of using those statements would be, what those statements would be there to show. The government speaks about whether or not the statements of other acts are inextricably intertwined with the present offense. And there are cases that seem to be very on point in this type of circumstance, cases like Viscara. In that case, it was a case where Viscara had been charged with bringing in a precursor chemical to methamphetamine. And one of the instances that the government had stated was inextricably intertwined was the fact that Viscara had in his pocket or on his person at the time of his arrest possession of methamphetamine. And in that case, the government had tried to bring in the possession of methamphetamine to show that Viscara had knowledge that at that time he was smuggling, that he knew that those chemicals would be used to make methamphetamine. And this Court found in that case that it was not inextricably intertwined with the present offense. The case has a familiar ring somehow. It should, Your Honor. Also, I would note that it's not part of the transaction that was charged in this case. The transaction that was charged was importation of marijuana on April 15th. There was no conspiracy charge. The government would have no problem in redacting the parts of the statement that pertained to other acts in money smuggling, passenger and 60 prior loads. Any of those statements could easily have been parsed out and redacted. The government did not need to introduce those statements in order to give a cohesive story as to what happened at the port of entry. Lastly, I would just like to state that any statement that a person makes at the time of interrogation doesn't automatically make that statement relevant. There are numerous statements which people make at the time of interrogation through agents under that kind of stress that don't necessarily become relevant in a case. A person could say that they had gone to Hawaii the day before. They could say that they have AIDS and that that's part of why they're explaining what happened. That doesn't mean that it makes it relevant in the instant offense and that it's relevant before the jury. It has to be relevant to the instant offense in order for that to come in before the jury. Thank you. Thank you very much. We thank both counsel for their arguments and we stand in recess.
judges: Farris, Fernandez, Bybee